# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NUNO CASANOVA,

    **Plaintiff,**

    **v.**                                **CA No. 05-496 (JMF)**

MARATHON CORPORATION *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for all purposes including trial.  Currently pending and ready for resolution is Third Party Defendant/Cross-Defendant Aggregate and Dirt Solutions, LLC's Motion for Summary Judgment ("MSJ") [#69].  For the reasons stated below, the motion will be denied.

## BACKGROUND

Plaintiff in this case is Nuno Casanova ("plaintiff"), a citizen of Virginia.  Plaintiff brought this personal injury action against three defendants:  1) Marathon Corporation ("Marathon"), a Pennsylvania corporation, 2) Capitol Paving of DC, Inc. ("Capitol"), a District of Columbia corporation, and 3) Chesapeake Electrical System, Inc. ("Chesapeake"), a Maryland corporation.  Jurisdiction in this court is based on the diversity of the citizenship of the parties, pursuant to Title 28 U.S.C. § 1332.  In addition, the amount in controversy exceeds $75,000.00.

Following the filing of the original suit, Marathon sued FMC Civil Construction, LLC ("FMC"), a Maryland corporation.

FMC, in turn, sued the following three entities:  1) Ft. Myer Construction Company ("Ft. Myer"), a Virginia corporation, 2) L&S Construction ("L&S"), a District of Columbia corporation, and 3) Driggs Corporation, a Maryland corporation that has since been dismissed from the case.

Ft. Myer, in turn, cross-claimed against L&S and also sued Aggregate & Dirt Solutions, LLC ("ADS"), a District of Columbia corporation.

L&S, in turn, counter-claimed against FMC and sued the following three entities: 1) Marathon, 2) Chesapeake, and 3) ADS.

## DISCUSSION

I.      <u>Standard of Review</u>

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "To determine which facts are 'material,' a court must look to the substantive law on which each claim rests." <u>Bobreski v. U.S. Envtl. Prot. Agency</u>, 284 F.Supp.2d 67, 72 (D.D.C.2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A 'genuine issue' is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." <u>Bobreski</u>, 284 F.Supp.2d at 72-73 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505).
>
> To prevail on a motion for summary judgment, a defendant must show that the plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322, 106 S.Ct. 2548. In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. 2505. In defending against a motion for summary

judgment, the plaintiff cannot rely solely on allegations and
conclusory statements, but must present specific facts that
would enable a reasonable jury to find in its favor. Greene
v. Dalton, 164 F.3d 671, 675 (D.C.Cir.1999).

Everson v. Medlantic Healthcare Group, 414 F. Supp. 2d 77, 81-82 (D.D.C. 2006).

II.     Statement of Undisputed Material Facts

1.     Marathon was the general contractor on a construction project located near
       Brentwood Road, N.E., Washington, D.C. Complaint ("Comp.") ¶ 2.

2.     Chesapeake was the electrical subcontractor and was responsible for
       installing the temporary electrical power lines located in the parking lot,
       which were connected to Marathon's construction trailers. Comp. ¶ 3.

3.     Capitol was the paving subcontractor. Comp. ¶ 4.

4.     Plaintiff was employed by Ft. Myer, a subcontractor. Comp. ¶ 5.

5.     On May 7, 2002, at approximately 2:30 p.m., a temporary electric power
       line attached to a pole in the parking lot struck plaintiff. Comp. ¶ 6.

6.     On May 7, 200, Howard Cohen ("Cohen"), an employee of ADS, signed
       L&S rental ticket #24925 for the rental of a tandem axis dump truck. MSJ,
       Exhibit A at page 2; Id., Exhibit B at pages 2-3.  Cohen signed the rental
       ticket at 6:55 a.m. Id., Exhibit A at page 2.

7.     The operator of the truck was Mr. Legion ("Legion"). MSJ, Exhibit A at
       page 2.

8.     On the back of the rental ticket, various terms and conditions are listed.
       MSJ, Exhibit A at page 3.  Paragraph 4 states the following:

       Upon delivery LESSEE ASSUMES SOLE
       RESPONSIBILITY for the supervision, use, operation,
       existence, guidance and control of operator and Equipment.

> Lessee hereby agrees to indemnify and save harmless L & S from and against all claims, suits, judgments, damages, a loss and expense of every kind and nature whatsoever including, but not limited to, (1) attorney's fees, costs and expense of litigation, (2) loss of use of Equipment at prevailing rates, (3) damage to or loss of any property including Equipment, (4) injury, disease or death of or to any person or persons whether employees of L & S or otherwise, (5) theft, destruction or vandalism of Equipment, and (6) failure to comply or conform with laws, ordinances or regulations.  L & S shall be deemed an "Additional insured" under the terms of Lessee's policy whenever such coverage is available under the terms of the Lessee's policy or endorsements thereto.  Such insurance of Lessee shall be primary and any coverage available to L & S shall be secondary and excess to such coverage.  Additionally, L & S shall not be liable for any damage or delay by reason of the operation or condition of Equipment or delay in delivery of same.

> Id.

9.   On May 7, 2002, ADS sold and delivered materials to Ft. Myer. MSJ, Exhibit E at pages 2-3.

10.  Joseph Leonard ("Leonard") is the Safety Director for L&S. Third Party Plaintiff, L & S Construction's Opposition to Third Party Defendant Aggregate and Dirt Solutions, LLC's Motion for Summary Judgment ("Opp."), Exhibit 3 at page 2.

11.  L&S and L&S Equipment, Inc. are the same company. Opp., Exhibit 3 at page 2; Id., Exhibit 2 at page 2.

12.  ADS and L&S are both partially owned by Luis Neto and members of the Neto family. Opp., Exhibit 3 at page 2.

13.  Terri Woodfolk ("Woodfolk") is the Executive  Assistant to the President of L&S. Opp., Exhibit 2 at page 2.

III.    <u>Conclusions of Law</u>

 A. <u>Choice of Law</u>

 Jurisdiction over the original complaint is based on the diversity of citizenship of the original parties.  The court, in an exercise of its discretion, asserts supplemental jurisdiction over the claims, counter-claims, and cross-claims of the third parties.  <u>See Dailey v. Park</u>, --- F. Supp. 2d ---, 2007 WL 38334, at *4 (D.D.C. 2007).  The court must therefore apply the laws of the District of Columbia, the jurisdiction in which it sits.  <u>See Gov't Relations Inc. v. Howe</u>, No. 05-CV-1081, 2007 WL 201264, at *8 (D.D.C. 2007) (quoting <u>Ideal Elec. Sec. Co. v. Int'l Fidelity Insur. Co.</u>, 129 F.3d 143, 148 (D.C. Cir. 1997)).

 B. <u>ADS's Motion for Summary Judgment Against L&S</u>

 L&S argues that ADS is bound by contract and/or by law to contribute towards or completely indemnify L&S. <u>L&S Construction's Third Party Claim Against Aggregate & Dirt Solutions</u> ¶ 4.  The first issue therefore is whether there existed a contract between the two parties.

 ADS argues that there was not.  According to an affidavit submitted by Cohen, he was never authorized by ADS to enter into "an agreement to indemnify L&S Construction Corporation for its own negligence." MSJ, Exhibit B at page 3.  Cohen further stated:  "I signed the ticket solely to verify the time the truck was in the yard.  I did not read the reverse side of the ticket.  I did not sign the ticket as agreeing to any of the terms on the reverse side of the ticket and I did not agree to such terms." Id.

 However, according to affidavits submitted by Leonard and Woodfolk, not only have the two companies done a significant amount of business together over the years but

the "[p]rincipals at Aggregate Dirt Solutions including Luis Neto [were] fully aware of the parameters of this arrangement including but not limited to the responsibilities assumed under the contract and the indemnity provisions contained in the rental arrangement." Opp., Exhibit 2 at page 2; Id., Exhibit 3 at page 2.  Leonard and Woodfolk further stated the following:  "The terms of the rental ticket are clear 'upon delivery Aggregate Dirt Solutions assumed sole responsibility for the supervision, use, operation, existence, guidance and control of the operator and equipment.  Aggregate Dirt Solutions agreed to indemnify and save harmless L&S from and against all claims, suits, judgments, damages, loss and expense of every kind of nature whatsoever.'  Such terms were part of the rental arrangement between the parties and were part and parcel of the consideration exchanged for the rental arrangement." Id.  Finally, both Leonard and Woodfolk stated that "the same personal counsel for both Aggregate Dirt Solutions and L&S Construction, Inc. drafted the subject agreement." Id.

The clear implication of Leonard's and Woodfolk's statements is that because the parties had dealt with each other numerous times in the past, they had arrived at certain understandings and had developed customary practices.  In other words, principals of both companies were aware that ADS leased equipment and manpower from L&S and more significantly, understood the terms on the back of the rental ticket to be the binding terms of a contract between the two parties, whereby, upon allowing one of it employees to sign the ticket for receipt of the truck and driver, ADS agreed to completely indemnify L&S from all claims against it.  Due to the existence of numerous genuine issues of material fact, that I have just identified, as to whether a contract was formed between the

two companies, the court is precluded from granting ADS's motion for summary judgment.

Although unnecessary for the court's ruling, there also exist genuine issues of material fact as whether there existed a common law obligation between L&S and ADS. "Absent an express agreement," is it appropriate for the court to imply a duty to indemnify "`out of a relationship between the parties,' to prevent a result 'which is regarded as unjust or unsatisfactory.'" East Penn Mfg. Co. v. Pineda, 578 A.2d 1113, 1126 (D.C. 1990) (quoting Myco, Inc. v. Super Concrete, 565 A.2d 293, 29 (D.C. 1989)). See also Lumbermens Mut. Cas. Co. v. A-T-O, Inc., 441 F. Supp. 322, 324 (D.D.C. 1977) ("As was stated in Capital Food Mart v. Sam Blanken & Co., Inc., D.C.App., 267 A.2d 371,372 (1970), 'The authority of an (agent) of a corporation to bind the corporation may be inherent in his office, may be expressly vested in him, or may be conferred upon him by virtue of the corporation's course of conduct (apparent authority).'"). The narrow issue therefore is whether Legion, the driver of the L&S truck, was acting as an agent of ADS, thus giving rise to an implied duty on ADS's part to indemnify L&S.

In the District of Columbia, the key issue is the degree of control exercised by the principal over the agent (or master over the servant):

> While no single factor is controlling, "the decisive test . . . is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done." . . . In this context, the right to control means "the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision." . . . In analyzing an employer's right to control, we look to the relationship between the parties and the language of any agreement between them, if any.

Beegle v. Restaurant Mgmt., 679 A.2d 480, 485 (D.C. 1996) (citations omitted).

In the case at bar, there are genuine issues of material fact as to whether ADS did in fact have the right to control and direct Legion, either in the performance of his work or the manner in which he performed his work.  ADS claims 1) that it did not exercise any control over Legion whatsoever, 2) that Legion was an employee of L&S operating a vehicle owned by L&S, and 3) that the only tie that Legion and the truck had to ADS was that it was carrying aggregate supplied by ADS.

L&S, on the other hand, claims that Legion and the truck were clearly under ADS's control at the time of the accident:  "As per custom, the leased operator and vehicle were dispatched to Aggregate Dirt Solutions' yard in the early morning hours of May 7, 2002.  Upon arriving at the yard (i.e., the delivery and starting time of the rental) they were under the guidance, direction, control and supervision of Aggregate Dirt Solutions' personnel until released in the afternoon."  Third Party Plaintiff L&S Construction's Response to Third Party Defendant ADS' Reply Memorandum to its Opposition to the Third Party Defendant's Motion for Summary Judgment, Exhibit 1 at page 3.

The issue of whether there exists a common law obligation on ADS's part to indemnify L&S for the actions of one of its employees while he was driving an L&S truck cannot, therefore, be resolved because it presents an obvious issue of fact—what control did ADS have over Legion and the truck?

C.        ADS's Motion for Summary Judgment Against Ft. Myer

As noted above, Ft. Myer filed a cross-claim seeking indemnification against both L&S and ADS.  Due to the existence of genuine issues of material fact as to the nature of

the relationship between L&S and ADS, the determination of which will necessarily resolve any questions regarding the indemnification of Ft. Myer, ADS' motion as to Ft. Myer is, as Ft. Myer argues, premature and will also be denied.

## CONCLUSION

Due to the existence of genuine issues of material fact, ADS's motion for summary judgment as to both L&S and Ft. Myer will be denied.  An Order accompanies this Memorandum Opinion.

_____
**JUDGE JOHN M. FACCIOLA**
**March 6, 2007**                    **UNITED STATES MAGISTRATE JUDGE**