## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NUNO CASANOVA,

      **Plaintiff,**

      **v.**                                     **CA No. 05-496 (JMF)**

MARATHON CORPORATION *et al.*,

      **Defendants.**

### MEMORANDUM OPINION

This case was referred to me for all purposes including trial. Currently pending and ready for resolution are the motions listed in the attached Appendix.

### BACKGROUND[1]

Plaintiff in this diversity case is Nuno Casanova ("plaintiff"), a citizen of Virginia. Plaintiff brought this personal injury action against three defendants: 1) Marathon Corporation ("Marathon"), a Pennsylvania corporation, 2) Capitol Paving of DC, Inc. ("Capitol"), a District of Columbia corporation, and 3) Chesapeake Electrical System, Inc. ("Chesapeake"), a Maryland corporation.

Following the filing of the original suit, Marathon sued FMC Civil Construction, LLC ("FMC"), a Maryland corporation. Marathon also filed a cross-claim against Chesapeake.

FMC, in turn, sued the following three entities: 1) Ft. Myer Construction Company ("Ft. Myer"), a Virginia corporation, 2) L&S Construction ("L&S"), a District

---

[1] Because there are several parties and several cross and counter claims, I repeat herein the background section from an earlier opinion in this case, <u>Casanova v. Marathon</u>, 477 F. Supp. 2d 98, 99 (D.D.C. 2007).

of Columbia corporation, and 3) Driggs Corporation, a Maryland corporation that has

since been dismissed from the case.

Ft. Myer, in turn, cross-claimed against L&S and also sued Aggregate & Dirt

Solutions, LLC ("ADS"), a District of Columbia corporation.

L&S, in turn, counter-claimed against FMC and cross-claimed against 1)

Marathon, 2) Chesapeake, and 3) ADS.

**DISCUSSION**

The jumble of motions and cross motions requires a careful delineation of the

nature of each party's claims and defenses to cross and counterclaims. I will begin with

the plaintiff and his claims against Chesapeake, Marathon, and Capitol, and I will call

them direct liability claims, meaning that plaintiff is attempting to impose liability on

those parties for something they did or failed to do.

A.   <u>Direct Liability</u>

1.   <u>The Testimony of Liberto Nunes</u>

Liberto Nunes, who worked for Ft. Myer and was therefore Casanova's

supervisor, testified in his deposition as follows:

> When the guy came back, he said it was the vibrations of
> the machine we were using that had caused the cable to
> drop. I said, but how is that so when you have this wire
> here that is already rusty? And then eventually he admitted
> that he had happened to – it had slipped from his grip. So
> when it slipped from the grip, it came crashing down, the
> cable.
>
> * * *
>
> Then the guy who had moved the truck walked back to us
> and was saying to the effect that the vibrations were what
> caused the fall, and I said, no, I saw you working up there
> when it slipped, and then his partner, I believe the

supervisor, came and confirmed, yes, there had been a slip
when they were trying to hold up the cable, and that caused
it to collapse, and having said that, he know [sic] went
ahead and called for the ambulance.

<u>Defendant Chesapeake Electrical Systems, Inc.'s Objection to and Motion to Strike
Plaintiff's Evidence Submitted in Opposition to Chesapeake's Motion for Summary
Judgment</u> at 2.

Chesapeake, in moving to strike this testimony, points out that (1) Nunes did not

see the accident; (2) he could not identify the company that was working on the poles just

prior to the accident; and (3) he could not identify the individuals who made the

statements.  Specifically, Nunes stated, "I don't remember the name of the power

company, the electrical company, I don't recall their name exactly, but he moved the

truck from where it had been positioned first and parked it some other place." <u>Id.</u> at 3.

The opponent of a motion for summary judgment can defeat it only by relying on

admissible evidence.[2]  But, as plaintiff points out, there is no dispute that the only entity

---

[2] <u>See</u> <u>Gleklen v. Democratic Cong. Campaign Comm.</u>, 199 F.3d 1365, 1369 (D.C. Cir. 2000):

The rather awkward language of Rule 56(e) of the Federal Rules of
Civil Procedure provides that "an adverse party may not rest on mere
allegations or denials of the adverse party's pleading, but the adverse
party's response, by affidavits or as otherwise provided in this rule,
must set forth specific facts showing that there is a genuine issue for
trial." While a nonmovant is not required to produce evidence in a *form*
that would be admissible at trial, the evidence still must be capable of
being converted into admissible evidence. The opening lines of the rule
suggest as much: "Supporting and opposing affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in
evidence, and shall show affirmatively that the affiant is competent to
testify to the matters stated therein." See also Celotex Corp. v. Catrett,
477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Otherwise,
the objective of summary judgment-to prevent unnecessary trials-would
be undermined. See id. at 323-24 & n. 5, 106 S.Ct. 2548. Verdicts
cannot rest on inadmissible evidence. Gleklen's evidence about the
conversation is sheer hearsay; she would not be permitted to testify
about the conversation at trial. See FED. R. EVID. 801-807. It
therefore counts for nothing. See 10A CHARLES ALAN WRIGHT ET
AL., FEDERAL PRACTICE AND PROCEDURE § 2722, at 371-72 &
n.11 (1998) (citing cases).

that had responsibility for the poles was Chesapeake.  It would therefore be legitimate for me to invoke Federal Rule of Evidence 104(a) and conclude that the jury may infer that the worker who made the statement about dropping the wire was employed by Chesapeake.  It would then follow that his statement was an admission of a party opponent and not hearsay under Federal Rule of Evidence 801(d)(2)(D).  See Ware v. Howard Univ., 816 F. Supp. 737, 746 n.10 (D.D.C. 1993) (admitting a statement made by the executive assistant to defendant's Vice President as an admission of a party opponent under Rule 801(d)(2)(D) because "it admits to the university's practice of not promoting employees within ten years of retirement age."); Rainbow Travel Serv., Inc. v. Hilton Hotels Corp., 896 F.2d 1233, 1242 (10th Cir. 1990) (admitting the statement of the shuttle bus driver regarding the hotel's reservation practices as an admission under Rule 801(d)(2)(D) "because it was a statement by a party's agent concerning a matter within the scope of his agency.").

But, the admission of the man who Nunes said dropped the wire is admissible only as to Chesapeake, that man's employer; as to everyone else, the statement quoted by Nunes is hearsay.  It may not serve as the premise of liability against any other defendant, including the defendants Casanova sued, Marathon and Capitol.  Accordingly, Nunes' statement cannot be the basis of any liability premised on their negligence, and Casanova does not point to any other evidence upon which the jury could rely for the proposition that Marathon or Capitol either performed some negligent act or negligently failed to perform some act that was the proximate cause of the wire striking him.

     2.       The Testimony of Daryl Anderson

Since liability cannot be imposed upon Capitol or Marathon on the basis of what Nunes said, it can only be based on some other negligent act.  As to Capitol, Casanova claims that a dump truck hit a wire and that ultimately an electrical wire fell on him.

There is no dispute among the parties that on the morning of May 7, 2002, sometime between 7:00 and 8:00 a.m., a dump truck transported ADS's aggregate to the construction site where plaintiff worked. Motion for Summary Judgment of Fourth Party Defendant Aggregate and Dirt Solutions, LLC at 16 (citing 30(b)(6) Marshall deposition at 27-28).  Colin Marshall, who works for Marathon, testified in his deposition that, as the driver of the dump truck was lifting the bed of the truck, the bed collided with a telephone line, causing the telephone line to droop down. Id. at 17 (citing Marshall deposition at 30-31).  But, according to Daryl Anderson, who works for Chesapeake, Marshall also said that a dump truck had hit the electrical wire. Plaintiff's Opposition to the Motions for Summary Judgment Filed by Defendant Capitol Paving of DC, Inc., Third-Party Defendants L & S Construction, FMC Civil Construction, LLC, Fort Myer Construction and Fourth-Party Defendant Aggregate and Dirt Solutions, LLC at 17-18 ("Plains. Opp.") (citing Anderson deposition at 55-56).  From that testimony, Casanova could premise liability against Capitol for negligently operating the truck that hit the wire, whether the telephone or the electrical wire.  He could argue that if the truck hit the telephone wire, it could have also hit the electrical wire such that the electrical wire fell on him later that day.

If Anderson repeats that testimony at trial or the transcript of his deposition is used to impeach any contrary testimony, his statement of what he heard Marshall say is an admission by Marshall's employer, Marathon, a party opponent under Rule

801(d)(2)(D). <u>Wilburn v. Robinson</u>, 480 F.3d 1140, 1148 (D.C. Cir. 2007); <u>Murrey v.</u>

<u>United States</u>, 73 F.3d 1448, 1455 (7th Cir. 1996).  While Marshall's statement is an

admission of a party opponent, that party is Marshall's employer, Marathon, not

Chesapeake or Capitol.  It may therefore not serve as an evidentiary premise for the

imposition of any liability upon either Capitol or Chesapeake; neither of them employed

Marshall.

       3.     <u>The Testimony of Joseph Leonard</u>

      The next possible theory of recovery against Capitol would have to be based on

the testimony of Joseph Leonard, the Safety Director for Capitol, who told John Bosley,

claims counsel for third-party defendant Fort Myer, that a Capitol dump truck had hit a

line on the morning of May 7, 2002.  <u>See</u> Plains. Opp. at Exhibits 2-4.  If Bosley testifies

as to what Leonard told him, Leonard's statement is deemed an admission of a party

opponent and is therefore admissible against Capitol because it was uttered by one of its

employees.  But, the problem with Leonard's statement is that he did not specify whether

he meant the electrical wire or the telephone wire, and there is no evidence that his

statement is based, as it must be, on his personal knowledge as opposed to what some one

else told him. Fed. R. Evid. 602.  The only statement in the record that the truck hit the

electrical wire is Marshall's, but Marshall did not work for Capitol.  There is therefore no

admissible evidence supporting the assertion that the Capitol dump truck hit the electrical

wire and therefore no premise upon which to predicate any claim that Capitol operated

the dump truck negligently, causing the electrical wire to fall down.

      That would not be the case if Casanova could provide me with evidence that

Bosley heard Leonard say that (1) he saw the dump truck hit the electrical wire or (2) if

he did not, Leonard heard that from someone whose testimony qualifies as an admission by Capitol.  Without such testimony, there is no evidentiary premise whatsoever for the imposition of liability upon Capitol.

4.      Res Ipsa Loquitur

Plaintiff also predicates claims on the theory of res ipsa loquitur, which allows for an inference that the harm suffered by the plaintiff was caused by the defendant's negligence if all three of the following conditions are satisfied:  (1) the event is "of the kind which ordinarily does not occur in the absence of someone's negligence, (2) the event is "caused by an agency or instrumentality within the exclusive[3] control of the defendant" and (3) the event was not "due to any involuntary action or contribution on the part of the plaintiff." Westinghouse Elec. Corp. v. Seal & Co., 842 F. Supp. 586, 590 (D.D.C. 1994).  Significantly, "the cause of the accident must be known before we can determine that the causal instrument was within the exclusive control of the defendant and that the injury was not due to an act of the plaintiff." Londono v. Wash. Metro. Area Transit Auth., 766 F.2d 569, 571 (D.C. Cir. 1985).  "'[T]he doctrine of *res ipsa loquitur* ... does not come into play in cases where the cause of the accident is unknown and the instrumentality of the injury was not shown to be under the exclusive control of the defendant.'" Jones v. Safeway Stores, Inc., 314 A.2d 459, 461 (D.C.1974) (citations omitted).

In this case, it is unclear 1) what caused a wire to fall on plaintiff, and 2) what wire fell on plaintiff, and 3) what line was struck by the Capitol Paving dump truck.  In

---

[3] Some of the cases require that the control be exclusive, while others allow for it to be exclusive or joint. See Scott v. James, 731 A.2d 399, 404 (D.C. 1999) (exclusive or joint); Crenshaw v. Wash. Metro. Area Transit Auth., 731 A.2d 381, 383 (D.C. 1999) (exclusive or joint); D.C. v. Billingsley, 667 A.2d 837, 841 (D.C. 1995) (exclusive).

other words, although the parties agree that the mechanism of plaintiff's injuries was a falling wire, they dispute the cause of his injury—in other words, they disagree over what caused the wire to fall and which wire fell. <u>Londono</u>, 766 F.2d at 572.  These genuine issues of material fact thus preclude the Court from concluding, at the summary judgment stage, whether or not plaintiff may prevail against Chesapeake based on a theory of res ipsa loquitor.  <u>See</u> <u>Westinghouse</u>, 842 F. Supp. at 591 (holding that summary judgment on plaintiff's res ipsa loquitor theory was precluded both because there existed genuine issues of material fact as to the cause of the accident and whether or not one of the defendants had exclusive control over the instrumentality of the accident).  Plaintiff will therefore be permitted to advance this theory at trial.

     5.    <u>Negligent Supervision</u>

     The final theory upon which one of plaintiff's claims of direct liability is based is that of negligent supervision.  In paragraph two of the Complaint, plaintiff claims that Marathon, as the general contractor of the construction project, "owed a duty to maintain a safe worksite to all workers, such as the Plaintiff, who were present on the work-site." Complaint ¶ 2.  However, discovery in this case has not yielded any information regarding a specific act or omission by Marathon that plaintiff claims was the proximate cause of his injury.  Furthermore, it is the law of the District of Columbia that a general contractor is not responsible, respondeat superior, for the negligent acts of its subcontractors. <u>Levy v. Currier</u>, 587 A.2d 205, 209 (D.C. 1991) ("The well-established general rule in this jurisdiction is that when a person hires another to do certain work, reserving no control over either the work or the workmen, a relationship of contractee and contractor exists (as opposed to master and servant), and the contractee is not liable

to a third party resulting from the work of the independent contractor."); <u>Wash. Metro. Area Transit Auth. v. L'Enfant Plaza Props., Inc.</u>, 448 A.2d 864, 868 (D.C. 1982) ("The general rule is that an individual or corporation is not liable for injuries resulting from the work of an independent contractor.").  Yet, that is the only possible basis upon which Casanova can impose liability upon Marathon based on this record.  Thus, although Marathon has not moved for summary judgment as against plaintiff, the need to conserve the Court's and the parties' resources compels the pretrial resolution of whether Marathon should remain a defendant in this case.  If Marathon does not remain in the case, then its cross-claims against the other parties can be promptly dismissed as moot and the issues for trial appreciably narrowed.  I will therefore order Casanova to show cause why his claim against Marathon should not be dismissed because there is no genuine issue of material fact as to Marathon's liability and Marathon is entitled to judgment as a matter of law.

## CONCLUSION

An Order accompanies this Memorandum Opinion.

Dated: August 11, 2008

_____/S/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

**APPENDIX**

1.      Motion for Summary Judgment of Fourth Party Defendant Aggregate and Dirt

        Solutions, LLC [137]

2.      Third Party Defendant Fort Myer Construction Corporation's Motion for

        Summary Judgment Against the Plaintiff [140]

3.      Motion for Summary Judgment by Third-Party Defendant, FMC Civil

        Construction, LLC [142]

4.      Defendant Capital [sic] Paving of D.C. Inc [sic] and Third Party Defendant L&S

        Construction's Adopted Motion for Summary Judgment Against the Plaintiff

        [143]

5.      Defendant Chesapeake Electrical Systems, Inc.'s Motion to Dismiss Cross-Claims

        for Lack of Subject-Matter Jurisdiction and, in the Alternative, for Failure to State

        a Claim upon which Relief may be Granted [152]

6.      L&S Construction's Motion to Strike Chesapeake Electric [sic] Systems Inc.'s

        Moot and Untimely Motion to Dismiss, Opposition to Same in the Alternative,

        and Request for Costs and Attorneys Fees Necessitated in Having to Respond to

        Same [154]

7.      Defendant Chesapeake Electrical Systems, Inc.'s Objection to and Motion to

        Strike Marathon's Evidence Submitted in Opposition to Chesapeake's Motion to

        Dismiss [162]

8.      Cross-Claimant Marathon Corporation's Motion for Summary Judgment [165]

9.      <u>Defendant Chesapeake Electrical Systems, Inc.'s Motion for Summary Judgment Against Plaintiff</u> [166]

10.     <u>Defendant Chesapeake Electrical Systems, Inc.'s Objection to and Motion to Strike Plaintiff's Evidence Submitted in Opposition to Chesapeake's Motion for Summary Judgment</u> [172]