UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NUNO CASANOVA,

    Plaintiff,

    v.                                              Civil Action 05-496 (JMF)

MARATHON CORPORATION, et al.,

    Defendants.

**MEMORANDUM OPINION**

Currently pending and ready for resolution are the following motions: 1) <u>Defendant Chesapeake Electrical Systems, Inc.'s Motion to Dismiss Cross-Claims for Lack of Subject-Matter Jurisdiction and, in the Alternative, for Failure to State a Claim Upon Which Relief May be Granted</u> [#152], 2) <u>L&S Construction's Motion to Strike Chesapeake Electric Systems Inc.'s Moot and Untimely Motion to Dismiss, Opposition to Same in the Alternative, and Request for Costs and Attorney['s] Fees Necessitated in Having to Respond to Same</u> ("L&S's Mot.") [#154], 3) <u>Defendant Chesapeake Electrical Systems, Inc.'s Objection to and Motion to Strike Marathon's Evidence Submitted in Opposition to Chesapeake's Motion to Dismiss</u> ("Chesapeake's MTS") [#162], and 4) <u>Cross-Claimant Marathon Corporation's Motion for Summary Judgment</u> [#165].

**BACKGROUND**

The Court will not herein provide a detailed review of the procedural history of this case. Suffice it to say that plaintiff initially alleged various claims against three defendants: 1) Marathon, the general contractor, 2) Capitol Paving, a subcontractor, and 3) Chesapeake

Electrical, another subcontractor and that as a result of a cross claim filed by Marathon against third party Ft. Myer Civil, numerous other subcontractors were brought into the suit, along with their various cross and counter claims. The focus of this opinion will be on the claims between defendants Marathon and Chesapeake, and third party defendant L&S, one of the additional subcontractors that was brought into the suit as a result of Marathon's claim against Ft. Myer.

## DISCUSSION

I.   L&S's Motion to Strike Chesapeake's Motion to Dismiss

L&S moves to strike Chesapeake's motion to dismiss on two bases. First, L&S argues that the motion to dismiss is moot because the cross claims have already been deemed conceded by the Court: "Due to Chesapeake Electrical Systems, Inc.['s] failure to answer and/or otherwise file a timely responsive pleading to Marathon and L & S Construction's Cross - Claims the court has already determined that legal liability with respect to those claims has been conceded." L&S's Mot. at 2. Second, L&S argues that Chesapeake waived its right to assert any defenses because of its failure either to timely file an answer or responsive pleading or to move this Court for leave to file its motion to dismiss. Id. at 3.

Chesapeake counters that, pursuant to Rules 12(h)(2) and (3) of the Federal Rules of Civil Procedure, "federal courts *must* always evaluate their subject matter jurisdiction even if considerable time has passed." Defendant Chesapeake Electrical Systems, Inc.'s Reply in Support of its Motion to Dismiss and Opposition to L&S Construction's Motion to Strike at 2 (emphasis in original).

Chesapeake's interpretation of Rule 12 is correct. In its motion to dismiss, Chesapeake first argues that this Court lacks subject matter jurisdiction under Rule 12(b)(1) and that it is free

to make such an argument at any time. <u>Memorandum of Law in Support of Defendant Chesapeake Electrical Systems, Inc.'s Motion to Dismiss Cross-Claims for Lack of Subject-Matter Jurisdiction and, in the Alternative, for Failure to State a Claim Upon Which Relief May be Granted</u> ("Chesapeake's MTD") at 5.  Without regard to the merits of Chesapeake's argument, the case law clearly supports the proposition that a court may at any time consider a challenge to its jurisdiction over the subject matter of a case.  See <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); <u>United States ex rel. Schweizer v. OCE, N.V.</u>, 577 F. Supp. 2d 169, 173 n.2 (D.D.C. 2008) ("Failure to raise certain other defenses in a pre-answer motion or answer renders them forfeit, but the Court may always dismiss an action for lack of subject matter jurisdiction.").

II.    <u>Chesapeake's Motion to Dismiss Marathon's and L&S's Cross Claims</u>

The gravamen of Chesapeake's motion is that the Court lacks jurisdiction over the subject matter of Marathon's and L&S's cross claims because the relief they seeks is contingent upon a finding of liability on Chesapeake's part, a determination which the Court is yet to make. Chesapeake's MTD at 10.  L&S counters that it is the practice of this Circuit to allow cross claims for indemnification and contribution to go forward once the underlying liability is determined and that the need for judicial economy argues against dismissing the cross claims at this point in the litigation. L&S's Mot. at 6.

Pursuant to Article III of the United States Constitution, "the judicial power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may

from time to time ordain and establish." U.S. CONST. art. III, § 1. Such power to preside extends only to "cases" and "controversies." Id. § 2. In order to determine whether there exists a case or controversy, the courts have developed various justiciability doctrines. Allen v. Wright, 468 U.S. 737, 750 (1984). Two of these doctrines–standing and ripeness–are implicated in the case at bar.

The first doctrine, standing, contains the following three elements:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted). In other words, "[t]he injury alleged cannot be conjectural, hypothetical, remote, speculative or abstract; it must have occurred or be certainly impending." Ass'n of Admin. Law Judges v. U.S. Office of Pers. Mgmt., 533 F. Supp. 2d 155, 158 (D.D.C. 2008) (citing Nat'l Treasury Employees Union v. United Sates, 101 F.3d 1423, 1427 (D.C. Cir. 1996)). A related concept is that found in the second relevant doctrine, that of ripeness, which requires an examination of the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete

way by the challenging parties." Id. at 148-49.  Although claims are not ripe for adjudication if they are contingent upon future events, see Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 580-81 (1985), "if a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." Nat'l Treasury Employees Union, 101 F.3d at 1428.

L&S's and Marathon's claims for indemnification and contribution are, by their very nature, contingent upon future events because they were asserted as derivative cross claims against Chesapeake as a result of plaintiff's original claims against Chesapeake.  While the court of appeals for this Circuit has not yet spoken to the issue, other Circuits have concluded that a claim for indemnification premised on a potential liability to a third party is not justiciable under Article III. Armstrong v. Ala. Power Co., 667 F.2d 1385, 1388-89 (11th Cir. 1982); A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Corp., 559 F.2d 928, 932 (4th Cir. 1977); Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1169 (7th Cir.), cert. denied, 395 U.S. 959 (1969).  See C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 483 (3d Cir. 1981).  Accord: Pardee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823, 836 (D.R.I. 2004) ("Aptly, federal courts in other jurisdictions have routinely found that indemnity claims are unripe until the alleged indemnitee's liability has been fixed by a judgment or settlement."); Companion Assurance Co. v. Alliance Assurance Co., 585 F. Supp. 1382, 1385-86 (D.V.I. 1984); UNR Indus. Inc. v. Am. Mut. Liab. Ins. Co., 92 B.R. 319, 325-28 (N.D. Ill. 1988).

There is a perfect coincidence between the application of this principle and this Court's obligation to apply District of Columbia law in this diversity action. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  As I have stated in another opinion: "While there appears to be no District

of Columbia authority precisely on point, there appears to be a general rule that an indemnitor cannot be sued until the indemnitee is first held liable. 42 C.J.S. Indemnity § 54 (2005) ('Generally, ... an indemnitee is not entitled to recover under the agreement until he has made an actual payment or has otherwise suffered an actual loss.')." Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth., No. 04-CV-498, 2006 WL 1102767, at *2 (D.D.C. Apr. 26, 2006).  As noted in that opinion, a claim for indemnification does not accrue until the party seeking indemnification is held liable and makes a payment. Id.  More specifically, in the case cited in Disability Rights the D.C. Court of Appeals stated:

> The counterclaim for indemnification was properly dismissed because that action is premature.  The District has not yet paid any money, and while it could have filed a cross claim for indemnity or contribution in the first action under GS Civil Rule 13(f), it failed to do so.  Therefore, we think the general rule that the right to sue for indemnification (absent a specific contract for indemnity to the contrary) accrues when payment has been legally made by the indemnitee applies here. 42 C.J.S Indemnity § 25 (1944).

District of Columbia v. D.C. Transit Sys., Inc., 248 A.2d 184, 186 (D.C. 1969).

If this Court were to entertain the indemnity and contribution claims, the result in this case would be  entirely different from the result had the case been filed in the Superior Court, for this Court would be entertaining a case that the Superior Court would dismiss. That result is, simply put, impossible.  In Hanna v. Plummer, 380 U.S. 460 (1965), the Supreme Court stated:

> Erie and its progeny make clear that when a federal court sitting in a diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

Id. at 468 n.9.  That this Court would entertain an indemnity action prior to judgment against the indemnitor while the Superior Court would not first discriminates against District of Columbia residents in favor of out of state residents in diversity actions.  Out of state residents could press such a claim in this Court in diversity actions while District of Columbia residents could not press such a claim in Superior Court.  Moreover, plaintiffs who seek to press an indemnity or contribution action prior to judgment would certainly choose this Court over the Superior Court if they could.  It therefore follows that this Court must follow the principle articulated in the D.C. Transit Services case and dismiss the indemnity and contribution claims by both Marathon and L&S as premature.

II.     Marathon's Cross Claims Based on Negligence and Breach of Contract State Claims Upon Which Relief Can be Granted and Chesapeake Will Be Deemed to have Admitted Them.

Unlike L&S, which only cross claims for indemnity or contribution, Marathon also presses cross claims for negligence (Count I) and Breach of Contract (Count II).  Defendant Marathon Corporation's Cross-Claim Against Defendant Chesapeake Electrical System, Inc. [#10-2].  In Count I, Marathon alleges that Chesapeake had a duty to Marathon to safely install the wire that struck plaintiff but breached that duty and, as a result, "Marathon has sustained damages in being required to defend the instant lawsuit." Id. ¶ 8.  In Count II, Marathon alleges that it and Chesapeake entered into a contract pursuant to which "Chesapeake agreed to install, monitor, inspect, maintain, and repair" the line that struck Casanova. Id. ¶ 10.  Because of the breach of that contract, Marathon "demands judgment against co-defendant Chesapeake for money damages, plus interest, costs, and reasonable attorney's fees." Id., *ad damnum* clause at page 3.

Thus, Marathon is claiming that due to Chesapeake's negligence, it has sustained damages "in being required to defend the instant lawsuit."  Surely, claims for negligence and

7

breach of contract state claims upon which relief can be granted. They cannot be described as premature since they speak of damages that have already been suffered and are being suffered.

In the ordinary case, those claims would proceed to trial but I have already concluded that Chesapeake must be deemed to have conceded the claims made against it by Marathon and L&S. <u>Casanova v. Marathon Corp.</u>, 246 F.R.D. 376, 380 (D.D.C. 2007). I have reviewed that opinion and realized that my refusal to reconsider my initial decision that refused to permit Chesapeake to file its answers was premised upon my perception that the concession might not ever prejudice Chesapeake because Marathon and L&S could seek indemnification only if they were found liable to Casanova. <u>Id.</u> at 380. I appreciate that if Chesapeake cannot defend itself against Marathon's claims for negligence and breach of contract, I will have to enter judgment on those claims and turn to the question of damages. I see nothing in that consequence that would cause me to revisit my decision that Chesapeake's failing to file its answers to the cross-claims was not justified by excusable neglect and therefore Chesapeake will be deemed to have conceded Marathon's cross claims for negligence and breach of contract.

III.   <u>Chesapeake's Motion to Strike Marathon's Opposition Evidence</u>

I have already concluded that statement of a worker, that was referenced by Liberto Nunes, who told Nunes that he had dropped the cable that might have hit Casanova is not hearsay as to Chesapeake. <u>Casanova v. Marathon Corp.</u>, 570 F. Supp. 2d 53, 56-57 (D.D.C. 2008). The motion will therefore be denied, although given the dismissal of the indemnity and contribution claims and my determination that Chesapeake may not offer a defense to Counts I and II of Marathon's cross-claim, that denial may not have any practical significance.

IV.   <u>Marathon's Motion for Summary Judgement as to Chesapeake</u>

In its motion for summary judgment, Marathon argues that the Court has already concluded that by virtue of Chesapeake's failure to file a timely answer to Marathon's cross-claims, "'Chesapeake will be deemed to have conceded the claims made by Marathon.'" <u>Memorandum of Points and Authorities in Support of Cross-Claimant Marathon Corporation's Motion for Summary Judgment</u> [#165-4] at 3 (quoting <u>Casanova v. Marathon</u>, 246 F.R.D. 376, 380 (D.D.C. 2007)). In light of the Court's conclusion above that it lacks jurisdiction over Marathon's claims for indemnification and contribution, the only claims that remain at issue therefore are Marathon's claims for negligence and breach of contract. As to those claims, the Court previously concluded that Chesapeake had failed to make a sufficient showing of excusable neglect in support of its motion for reconsideration of the Court's denial of its motion for leave to file its untimely answers, noting that the decision was "well within the Court's discretion when the only reason given for Chesapeake's failure to file timely answers was because of its attorney's failure to keep track of the deadline for filing those answers." <u>Id.</u> In its opposition to Marathon's motion to dismiss, Chesapeake argues that, while Rule 12(a) provides that a party must serve its answer to a cross-claim within 20 days after being served, under Rule 55, there is no time limit to the filing of an answer as long as the cross-claimant has not yet sought a default judgment. <u>Defendant Chesapeake Electrical Systems, Inc.'s Memorandum of Points and Authorities in Support of Its Opposition to Marathon Corporation's Motion for Summary Judgment</u> [#169-3] at 5 n.2.

While Marathon has not yet sought a default judgment, contrary to Chesapeake's argument, this in no way affects this Court's previous finding that by failing to file a timely answer to Marathon's cross-claim, Chesapeake conceded Marathon's allegations. Default

judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. According to the Rule, where the claim is for an amount that it not yet certain, the prevailing party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). The basis for this Court's previous decision denying Chesapeake's motion for reconsideration was the principle, articulated in the case law and Local Rule 7(b), that a party's failure to timely file an opposition to a motion seeking relief permitted the Court to 1) strike the untimely opposition, 2) deem the motion conceded, and 3) grant the relief requested. <u>Chesapeake</u>, 246 F.R.D. at 380 (citing <u>D.A. v. District of Columbia</u>, No. 07-CV-1084, 2007 WL 4365452, at *7 (D.D.C. Dec. 6, 2007). Additionally, there is the cognate principle that under Rule 8(a)(6) of the Federal Rules of Civil Procedure, allegations in a complaint (other than as to damages) are deemed admitted if a responsive pleading is required and the allegation is not denied. If a timely answer to a complaint is not filed, it has to follow from Rule 8 that all the allegations in the complaint are deemed admitted. Accordingly, this Court appropriately struck Chesapeake's untimely answer and now must deem Marathon's allegations of negligence and breach of contract conceded.

Although Chesapeake has not formally moved this Court to reconsider its December 10, 2007 opinion cited above, it also has not provided any reason for the Court to do so, save its argument that, under Rule 55, it should be permitted to file its answer to Marathon's cross-claim because a default judgment has not been entered against it. As the Court noted above however, Rule 55 is inapplicable in this situation and therefore the Court's previous ruling stands. Marathon's motion for summary judgment regarding its claims of negligence and breach of contract as against Chesapeake will therefore be granted insofar as Chesapeake's liability will be

deemed conceded and denied insofar as there remain genuine issues of material fact as to the amount of damages Marathon incurred.

## CONCLUSION

For the reasons stated herein, L&S's motion to strike Chesapeake's motion will be denied, Chesapeake's motion to dismiss Marathon's and L&S's cross claims for indemnity and contribution will be granted, Chesapeake's motion to strike Marathon's evidence will be denied, and Marathon's motion for summary judgment as to Chesapeake will be granted in part and denied in part. An Order accompanies this Memorandum Opinion.


Dated: March 20, 2009                             /S/
                                        JOHN M. FACCIOLA
                                        UNITED STATES MAGISTRATE JUDGE